IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY J. WILEY,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>AUSTIN, 552 Employee, in Individual Capacity; TERRI, Unit Manager, in Individual Capacity; DREW ENGLISH, Compliance Team, in Individual Capacity; DON WHITMOR, Compliance Team, in Individual Capacity; VICTOR, Therapist, in Individual Capacity; JAMES C., Patient - 3F Unit, in Individual Capacity; JOKER T., Patient - 3F Unit, in Individual Capacity; MIKE EPPMAN, Social Worker, in Individual Capacity; and JAKE, 552, in Individual Capacity;<br><br>　　　　　　Defendants. | 8:20CV220<br><br><br>**MEMORANDUM<br>AND ORDER** |

　　　　Plaintiff filed his Complaint on June 10, 2020. (Filing 1.) He has been given leave to proceed in forma pauperis without prepayment of fees. (Filing 5.) The court will now conduct an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

I. SUMMARY OF COMPLAINT

　　　　Plaintiff has been civilly committed to the Norfolk Regional Center ("NRC"). He brings this 42 U.S.C. § 1983 action against two other patients and seven NRC employees, who are sued in their individual capacities only, for "1st amendment, restricting access to the law, and lack of safety in a medical facility, unethical treatment." (Filing 1 at 3.) Plaintiff's "Statement of Claim" reads as follows:

> On the 28th of May Joker T made a sexual harassment/humiliating comment about "fucking me in the ass and how he doesn't because he doesn't know where my asshole's been." This is referring to how I was raped in jail upon coming to NRC. I reported this to Mike Eppman and he refused to call the State Patrol when I asked to press charges. I reported it to my therapist and unit manager and they both did nothing. He was reported and yet he gets more privileges. On the 1st of June James C [illegible] made terroristic threats "saying he was gonna slash my neck." I reported this to the above and as well as sending a request to speak to the compliance team. The 2nd of June I was silenced on trying to voice my safety by Victor. He told me because I will not finish my assignment that I'm not allowed to take a focus (a way to voice a concern). This is against my 1st amendment rights. Austin the SS2 [Security Specialist 2] laughed at me and told me that I should not get upset over these things. I spoke to Jake the SS2 and asked him what he thought. "You just a [lays back?] and take it like a bitch." I do not feel this is an ethical medical facility and it doesn't care about our 1st amendment right to voice. Don Whitmar [*sic*] has actually told me that I'm not allowed to call the authorities because he will restrict my phone access. This is a threat towards my 1st amendment rights and right to a safe and ethical/nonprejudice treatment. I would like to sue each individual involved for $500,000. I do not feel safe and feel if I try to voice my safety concern then I'm either gonna be retaliated against or silenced altogether. I spoke to Drew English after a week of waiting to talk to him on these issues but my request apparently got lost even though its in a lock box.

(Filing 1 at 7.)

## II. MOTION TO AMEND

On June 19, 2020, Plaintiff filed a motion to amend the Complaint to correct the names or titles of certain Defendants. (Filing 6.) That motion will be granted.

## III. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. The court must dismiss a complaint or

any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## IV. DISCUSSION

Liberally construing Plaintiff's Complaint, this is a civil rights action filed under 42 U.S.C. § 1983. To state a claim under this statute, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). An act violating the Constitution is considered to have occurred under color of law if it is "fairly attributable" to a governmental entity. *Meier v. St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019) (quoting *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007)), *cert. denied*, 140 S. Ct. 2566 (2020).

The two patients whom Plaintiff names as Defendants, Joker T. and James C., are private parties who are not alleged to have been acting under color of state law

when they made harassing or threatening comments. Therefore, no plausible § 1983 claim is stated against them. *See Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 536-37 (8th Cir. 2014) (plaintiff failed to state § 1983 claim against private party where no facts plausibly alleged mutual understanding between private party and state actor). "The one unyielding requirement [to hold a private party liable] is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." *Meier*, 499 F.3d at 829 (quoting *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007)).

Plaintiff claims the seven NRC employees who are named as Defendants violated his constitutional rights when (1) social worker Mike Eppman refused to call the State Patrol after Plaintiff said he wanted to press charges against Joker T. for his harassing comment, (2) Plaintiff's therapist [Victor?] and unit manager [Terri?] also did nothing after he reported Joker T.'s comment to them, (3) Plaintiff reported to these same individuals that James C. threatened to slash Plaintiff's neck, (4) Victor would not let Plaintiff "take a focus" as a way to voice his concern, (5) two security specialists, Austin and Jake, advised Plaintiff not to get upset or to do anything, (6) compliance team member Don Whitmar[1] said he will restrict Plaintiff's phone access, and (7) Plaintiff waited for a week to speak to the other compliance team member, Drew English.

### A. First Amendment Claims

"As a general matter, the First Amendment prohibits governmental actors from directing what persons may see, read, speak, or hear." *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020) (*quoting Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 621-22 (8th Cir. 2002) (en banc)). The first, second, third fifth, and seventh claims listed above do not involve any restrictions being placed on Plaintiff's right to speak. Plaintiff may have been disappointed with the response—or lack of response—he received from the people he talked to, but they are not alleged to have interfered with his ability to lodge a complaint with the State Patrol

---

[1] This Defendant's name is spelled "Whitmor" in the caption to the Complaint, but is spelled "Whitmar" in the body of the Complaint. Plaintiff's motion to amend (Filing 6) specifies that "Whitmar" is the correct spelling.

or any other authority. *See, e.g.*, *Montoya on Behalf of S.M. v. Espanola Pub. Sch. Dist. Bd. of Educ.*, No. CV 10-651 WPJ/LFG, 2013 WL 12333629, at *4 (D.N.M. Feb. 20, 2013) (dismissing First Amendment claim where, *inter alia*, no facts were alleged to show that defendant prevented plaintiff from filing police report regarding alleged assault at school).

The fourth claim, against therapist Victor, does involve an alleged restraint on Plaintiff's speech, but the facts alleged are not sufficient to state a plausible First Amendment claim. Plaintiff does not explain what it means to "take a focus," but presumably it would involve some sort of discussion within the confines of NRC, which is a nonpublic forum.[2] "Any form of involuntary confinement, *whether incarceration or involuntary commitment,* may necessitate restrictions on the right to free speech." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1038-39 (8th Cir. 2012) (emphasis in original; quoting *Martyr v. Bachik,* 755 F.Supp. 325, 328 (D.Or. 1991)). Plaintiff alleges that Victor's proffered reason for not allowing Plaintiff to "take a focus" was because Plaintiff "will not finish [his] assignment." Again, it is unclear what this means, but it does not appear that Plaintiff was "silenced" because he "was trying to voice [his] safety." Without any factual allegations to demonstrate that the alleged restriction was content-based or unreasonable, one cannot begin to draw an inference that Plaintiff's First Amendment rights were violated by Victor.

---

[2] "[T]he legality of speech restrictions on state property 'turns on the nature of the property involved and the restrictions imposed.'" *Turning Point USA v. Rhodes*, No. 19-3016, __ F.3d __, 2020 WL 5104285, at *3 (8th Cir. Aug. 31, 2020) (quoting *Ball v. City of Lincoln*, 870 F.3d 722, 729 (8th Cir. 2017)). "[S]ome government property is not by tradition or designation a forum for expressive activities by the public…. The government retains much broader discretion to restrict expressive activities in these nonpublic forums." *Id.* (cleaned up). In a nonpublic forum, "not only may the government … establish time, place, and manner regulations on speech, it may reserve the forum for whatever the government's intended purpose may be, 'as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Turning Point USA at Arkansas State Univ. v. Rhodes*, 409 F. Supp. 3d 677, 693 (E.D. Ark. 2019) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)), *aff'd sub nom.*, *Turning Point USA v. Rhodes*, *supra*.

Finally, Plaintiff alleges that "Don Whitmar has actually told me that I'm not allowed to call the authorities because he will restrict my phone access." It is unclear whether Plaintiff's phone access has already been restricted so as to prevent him from calling the authorities, or whether his phone privileges will be restricted in some manner once he does contact the authorities. It is also unclear whether this statement was made before or after Plaintiff allegedly reported James C.'s threat to Defendant Whitmar.

The court takes judicial notice that Plaintiff alleges in another pending action that restrictions have been placed on his ability to contact the State Patrol. *See Wiley v. Norfolk Regional Center*, Case No. 8:20-cv-00147-BCB-SMB.[3] In conducting is initial review of the pleadings in that case, the court explained what facts Plaintiff would need to allege to state a plausible First Amendment claim:

> In the prison context, the Eighth Circuit Court of Appeals has held that analyzing an inmate's First Amendment right to communicate with those outside the institution is fact-intensive, and prisoners do not have a right to unlimited telephone use. *Id.* at 1039. In *Beaulieu*, the parties agreed that the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987), applied in determining the constitutionality of a policy limiting the telephone usage of civilly committed patients, and the court applied that standard:
>
>> (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest.

---

[3] The court can *sua sponte* take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.*

> *Beaulieu*, 690 F.3d at 1039 (internal quotation marks and citation omitted). *See also Bennett v. Turner*, No. C15-4197, 2015 WL 9165926, at *5 (N.D. Iowa Dec. 16, 2015) (applying *Turner v. Safley* factors to First Amendment claim by civilly committed plaintiff challenging telephone-use restrictions; noting courts' holdings that prisons and hospitals have great latitude to restrict telephone access and very rigid restrictions are permissible as long as detainees can still "communicate with the outside world").
>
> In amending his Complaint, Plaintiff must allege enough facts to allow the court to apply the *Turner* factors, including the nature of, and alleged reason for, the denial of Plaintiff's access to the telephone; whether Plaintiff was allowed to make other telephone calls; whether telephone restrictions were universally applied at his institution; and whether Plaintiff was given an alternative means to communicate with the outside world. *Bennett*, 2015 WL 9165926, at *5 (civilly committed plaintiff failed to state First Amendment claim challenging telephone-use restrictions because plaintiff omitted details that would allow court to apply *Turner* factors).

*Wiley v. Norfolk Reg'l Ctr.*, No. 8:20CV147, 2020 WL 2769141, at *3 (D. Neb. May 28, 2020). If in the present case Plaintiff is also complaining about an existing restriction, he will need to allege these same factual details, and, in seeking to hold Defendant Whitmar personally liable for the restriction, will need to allege enough facts to show what role Whitmar played in implementing or enforcing the restriction.

If Plaintiff is instead claiming that Defendant Whitmar threatened to restrict Plaintiff's phone access if he calls the authorities to report criminal activity at NRC, then other factors come into play. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).

It has been held that "filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the

7

government for the redress of grievances." *Meyer v. Bd. of Cty. Comm'rs of Harper Cty.,* 482 F.3d 1232, 1243 (10th Cir. 2007) (internal quotation marks and citation omitted); *see Montoya*, 2013 WL 12333629, at *4 ("Denying someone the ability to report physical assaults is an infringement of protected speech."); *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1043 (D. Minn. 2010) ("When a victim of a crime reports that crime to a police officer, she is exercising her First Amendment right to petition the government for the redress of grievances.").

Here, of course, Plaintiff does not allege that he actually reported a crime (such as the alleged terroristic threat) to the authorities. However, in an analogous situation involving prisoner grievances, the Sixth Circuit Court of Appeals, at least, has held that an inmate's threat to file a grievance that is not obviously frivolous constitutes protected conduct. *See White v. McKay*, No. 18-1473, 2019 WL 5420092, at *2 (6th Cir. June 27, 2019). "It is not clear whether the Eighth Circuit has addressed the issue, and the courts that have considered it have reached mixed results." *Rummer v. North Dakota*, No. 1:12-CV-020, 2015 WL 9263826, at *27 n. 12 (D.N.D. Sept. 28, 2015), *report and recommendation adopted*, No. 1:12-CV-020, 2015 WL 9239765 (D.N.D. Dec. 17, 2015), *aff'd*, 672 F. App'x 614 (8th Cir. 2016); *see Gibson v. Fischer,* No. 9:10–cv–0968 LEK/TWD, 2014 WL 7178346, at *15-16 (N.D.N.Y. Dec. 15, 2014) (noting that courts have split as to whether threatening to file a grievance is protected activity, and collecting cases).

The adverse action alleged here is also merely a *threat* to restrict Plaintiff's phone access, but the Eighth Circuit "has long held that 'a threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures' to sustain a claim of First Amendment retaliation." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (quoting *Burgess v. Moore,* 39 F.3d 216, 218 (8th Cir. 1994)). Thus, by analogy, Plaintiff might have a legitimate First Amendment retaliation claim.

However, Plaintiff's Complaint does not contain enough facts for the court to infer that Defendant Whitmar's statement about restricting Plaintiff's phone access was made in response to Plaintiff wanting to call the authorities to report a crime. In other words, it has not been sufficiently alleged that Defendant Whitmar's statement

8

was motivated, at least in part, by Plaintiff's exercise of protected activity.[4] Because this causal link is missing, no plausible claim for relief is stated.

In summary, Plaintiff's Complaint does not contain sufficient facts to state a plausible First Amendment claim against any Defendant. However, the court on its own motion will grant Plaintiff leave to file an amended complaint to allege a First Amendment claim against Defendant Whitmar, in his individual capacity, regarding existing or threated restrictions on Plaintiff's use of the telephone.

### B. Fourteenth Amendment Claims

"[G]overnment officials have 'an unquestioned duty to provide reasonable safety for all residents and personnel within [an] institution' where people are involuntarily committed." *Hall v. Ramsey Cty.*, 801 F.3d 912, 918 (8th Cir. 2015) (quoting *Youngberg v. Romeo,* 457 U.S. 307, 324 (1982)). "Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner. *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004).

It is well established that the Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." *Young v. Selk,* 508 F.3d 868, 871 (8th Cir. 2007) (quoting

---

[4] Whether phone restrictions would chill a person of ordinary firmness from contacting the authorities to report a crime is debatable, but "[e]xcept when the alleged harassment is so inconsequential that even allowing a claim would trivialize the First Amendment, … the determination of whether government action would chill an ordinary person's speech is a matter for the factfinder." *Bennie v. Munn*, 822 F.3d 392, 399 n.1 (8th Cir. 2016) (internal quotation marks omitted). "[I]n most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Id.* at 398 (quoting *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)); *see, e.g., L.L. Nelson Enterprises, Inc. v. Cty. of St. Louis*, 673 F.3d 799, 809 (8th Cir. 2012) (noting that "even the selective issuance of parking tickets to a complaining citizen" was held to support a jury's finding of unlawful retaliation in *Garcia v. City of Trenton,* 348 F.3d 726, 729 (8th Cir. 2003)).

*Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). "[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Revels,* 382 F.3d at 874. Instead, "[t]he rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment." *Id.* This distinction makes little difference as a practical matter, however, because the Fourteenth Amendment provides civilly committed individuals and other detainees "at least the same level of constitutional protection as the Eighth Amendment." *Nelson v. Shuffman,* 603 F.3d 439, 446 n. 3 (8th Cir. 2010) (failure-to-protect claims brought by detainee living in sex offender treatment center evaluated under standards applicable to prisoners' failure-to-protect claims).

"[T]he eighth amendment's prohibition against cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." *Young v. Selk,* 508 F.3d 868, 871-72 (8th Cir.2007) (quoting *Farmer,* 511 U.S. at 832). "Prison officials act unreasonably—thereby violating the Eighth Amendment—when they are deliberately indifferent to a 'substantial risk of serious harm." *Nelson*, 603 F.3d at 446 (quotation marks and citations omitted). To prove deliberate indifference, an inmate must make a two-part showing: "The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008) (quoting *Farmer,* 511 U.S. at 834) (internal citation omitted). The deprivation is "'objectively, sufficiently serious,' [under the first requirement when] the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" *Young*, 508 F.3d at 872 (quoting *Farmer,* 511 U.S. at 834). "An official is deliberately indifferent [under the second requirement] if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* at 873 (citing *Farmer,* 511 U.S. at 844-45).

Here, Plaintiff generally alleges that he "do[es] not feel safe" at NRC. He alleges that Joker T.'s comment was "sexual harassment" and humiliating, but does not claim that the comment put him in fear for is safety. By contrast, Plaintiff

10

characterizes James C.'s alleged comment that "he was gonna slash [Plaintiff's] neck" as a "terroristic theat." Plaintiff alleges that he reported James C.'s threat to Defendant Mike Eppeman, his therapist (presumably Defendant Victor), his unit manager (presumably Defendant Terri), and also sent a request to speak to the compliance team (presumably Defendants Don Whitmar and Drew English). It is not alleged, however, that any of these Defendants failed to investigate or to take any remedial action. Plaintiff also vaguely alleges that he had some discussion with Defendants Austin and Jake, but does not indicate what he told these Defendants.

Thus, to the extent Plaintiff is asserting a Fourteenth Amendment failure-to-protect claim against any or all of these Defendants,[5] factual support is lacking. Again, however, Plaintiff will be given leave of court to correct this pleading deficiency.

## V. CONCLUSION

Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently alleges a First Amendment claim against Defendant Don Whitmar, in his individual capacity, and also any Fourteenth Amendment claim(s) against Whitmar or other Defendants in their individual capacities. Plaintiff should be mindful to explain clearly, on a Defendant-by-Defendant basis, what was done by the Defendant, when it was done, why it was done, and how Plaintiff was harmed as a result of the Defendant's conduct. Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint—that is, it must stand on its own. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, his claims will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after he addresses the matters set forth in this Memorandum and Order.

---

[5] Plaintiff's Complaint only references the First Amendment, but "it is the facts alleged in a complaint, and not the legal theories, that state a claim." *Topchian*, 760 F.3d at 849; *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) ("[I]t is unnecessary to set out a legal theory for the plaintiff's claim for relief in a pleading." (internal quotation marks and citation omitted)).

11

IT IS THEREFORE ORDERED:

1. Plaintiff's motion to amend (Filing 6) is granted, and the Clerk of the Court is directed to make the following changes to the case caption on the court's docket:
   a. Change both references to "552 Employee" to "SS2 Employee."
   b. Change both references to "3F Unit" to "3E Unit."
   c. Change "Don Whitmor" to "Don Whitmar."
   d. Change "Mike Eppman" to "Mike Eppeman."

2. Plaintiff's claims against James C., Patient, and Joker T., Patient, are dismissed without prejudice, and those two Defendants shall no longer be parties to this action.

3. Plaintiff shall have until October 30, 2020, to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.

4. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

5. The Clerk of Court is directed to set a pro se case management deadline using the following text: **October 30, 2020**: amended complaint due.

Dated this 30th day of September, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

12